FILED
CLERK OF
CIRCUIT COURT

IN THE CIRCUIT COURT OF MARYLAND
FOR KENT COUNTY        2012 JUN 26  AM 11: 24

KENT COUNTY

CHRISTINE SENEY, Individually      *
and as Parent and Next friend of    *
ISAIAH SENEY and NEVAEH SENEY *
202 Fire Tower Road                 *
Camden, Delaware 19934-2854         *
                                    *
and                                 *
                                    *
ANTWAN R. SENEY                     *
202 Fire Tower Road                 *
Camden, Delaware 19934-2854         *
                                    *
       Plaintiffs                   *
                                    *    CASE NO. 14-C-12-9133
v.                                  *
                                    *
RENT-A-CENTER, INC.                 *
5502 Headquarters Drive             *
Plano, Texas 75024                  *
                                    *
and                                 *
                                    *
RENT-A-CENTER EAST, INC.            *
3rd Floor                           *
5700 Tennyson Parkway               *
Plano, Texas 75024                  *
                                    *
       Defendants                   *
*************************************************************

## COMPLAINT

NOW COME Plaintiffs, Christine Seney, Individually and as Parent and Next Friend of Isaiah Seney, and Nevaeh Seney (hereinafter "Plaintiffs"), and Antwan R. Seney, by and through their attorneys, Whitney & Bogris, LLP, and file this Complaint against Defendants, RENT-A-CENTER, INC. and RENT-A-CENTER EAST, INC. (hereinafter collectively "RAC"), and in support thereof state as follows:

1

## FACTS AND ALLEGATIONS COMMON TO ALL COUNTS

1. Since April 1, 2012, Plaintiffs have been residents of the State of Delaware, having a present residence address at 202 Fire Tower Road, Camden, Delaware 19934-2854. In March of 2012, Plaintiffs were residents of the State of Maryland with a residence address of 11943 Augustine Herman Highway, Kennedyville, Maryland 21645.

2. Upon information and belief, at all times relevant hereto, Defendant RAC was and is a corporation engaged in the business of selling and leasing new and used home furnishings in the State of Maryland and Kent County.

3. Defendants offer beds, mattresses, furniture, electronics, appliances and computers through rental purchase agreements that allow customers to obtain ownership of the merchandise at the conclusion of an agreed upon rental period. Defendants offer customers home-delivery of items obtained from Defendants.

4. At all times relevant hereto, Defendants owned and operated a retail Rent-A-Center store at 711 Washington Avenue, Chestertown, Maryland 21620-1057.

5. On or about March 10, 2012, Christine and Antwan Seney rented a "Captain's Bed" and two mattresses from Defendants' store in Chestertown, Maryland. Plaintiffs arranged for Defendants' agents to deliver the bed and mattresses to their home for use by their five-year-old son, Isaiah Seney. This was a trundle-type bed featuring two mattresses and an enclosed wood frame with drawers for clothing.

6. On April 3, 2012, Defendants' delivery drivers, believed to be RAC employees, arrived at Plaintiffs' home to deliver the bed and mattresses. The RAC employees brought the items into Plaintiffs' home and set them up in Isaiah's bedroom.

7. Unbeknownst to Plaintiffs, the bed and mattresses were infested with bed bugs.

8. Within the first week of the bed and mattresses being delivered, Isaiah Seney began to sustain itchy bites and a rash.

9. Throughout April of 2012, Isaiah Seney continued to suffer an increasing number of bite marks on his skin and was constantly scratching.

10. Several weeks after delivery of the bed and mattresses, Christine Seney suspected that the rash had something to do with the bed and mattresses and called RAC to complain.

11. RAC responded to the complaint by delivering two new mattresses. The RAC employees who delivered the new mattresses disposed of the old mattresses by placing them in a burn pit in the Seney family yard. The mattresses were burned in a bonfire because they were known by RAC employees to be infested with bed bugs. However, the RAC employees did not replace the wood bed frame which, unknown to Plaintiffs, but known to RAC, contained bed bugs and bed bug eggs.

12. On April 26, 2012, Isaiah Seney received medical treatment for his inflamed bites and rash and was diagnosed with bed bug bites. Christine Seney thereupon notified RAC and requested that the infested bed be removed.

13. On or about April 26, 2012, RAC employees came to the Seney residence and admitted that the bed was infested with bed bugs. Without encasing it in protective covering, a RAC employee carelessly dragged the infested bed out of the house and burned it in yet another bonfire on the Seney property.

14. Christine Seney requested that RAC hire an exterminator to treat her home. After a 10 day delay, the pest control contractor partially treated the home on or about May 10, 2012. RAC refused to pay for treatment of the entire house and has refused to pay for follow-up treatment. RAC has refused to pay for treatment despite knowing that the treatment did not eliminate the bed bugs, with full knowledge that Plaintiffs cannot afford to pay for the treatment and will be subjected to continued bites and a worsened infestation. A pest control company who inspected the property on behalf of the Plaintiffs confirmed that as of May 23, 2012 bed bugs are present in the home.

15. Plaintiffs are continuing to receive bed bug bites. Despite causing the infestation, RAC refuses to pay for the necessary treatment to rid the home of bed bugs.

16. Prior to the delivery of the mattresses and bed by Defendants, Plaintiffs had never had bed bugs in their residence and had not travelled to any locations of known bed bug infestations.

17. As a result the bed bug-infested mattresses and bed provided by Defendants, Plaintiffs were forced to dispose of personal property that had become infested with bed bugs or contaminated with bed bug eggs.

18. In addition, the bed bug infestation caused Isaiah Seney to suffer bodily injury in the form of numerous bites and a pruritic, spreading rash over his body. Christine Seney and 3-year old Nevaeh Seney also suffered and continue to suffer bodily injury in the form of intensely-itchy bites. Isaiah Seney underwent repeated medical treatments for the rash, including the prescription of oral steroids.

19. As a further result of the bed bug infestation, Plaintiffs have suffered emotional distress and mental anguish. Isaiah Seney has suffered sleep deprivation and is terrified to sleep in his bedroom due to fear of being bitten by bed bugs.

20. As an additional result of the bed bug infestation, Plaintiffs suffered emotional distress at being unable to ascertain the cause of the bites appearing on Isaiah Seney, fright, shock and revulsion at the discovery of masses of bed bugs on the mattresses and bed, anxiety over their inability to control the infestation and prevent further attacks on family members.

21. Moreover, Plaintiffs continue to be plagued by mental anguish and anxiety over the presence of bed bugs that manifests itself in jumpiness at the slightest itch or unexpected touch on their skin that might be a bug.

22. Finally, Plaintiffs have incurred or will be required to incur in the future economic loss including but not limited to the expenses associated with replacement of infested furniture and items lost as a result of the need to bag and remove personal property from the infested area, the costs of repeated extermination efforts, laundry and cleaning expenses, expenses associated with the purchase of plastic encasements mattresses and box springs, medical bills and pharmacy expenses.

23. At all relevant times, RAC knew of the resurgence of bed bug infestations across the nation, generally, and in Maryland, specifically. For years, RAC has been aware of the ever increasing risk of transmitting bed bugs on merchandise, especially used beds and mattresses previously present in homes infested with bed bugs, or if that merchandise was stored or transported in areas where bed bugs are present.

24. RAC, at all relevant times, was aware of the manner in which bed bugs could be transported, the fact that mattresses and wooden bed frames were favorite breeding and hiding places for bed bugs, and knew of the difficulty in eradicating a bed bug infestation once introduced into a customer's home.

25. In addition, RAC knew that mattresses and beds they stored, leased, transported and delivered could be or would become infested with bed bugs and that their customers were not aware of this fact or likely to discover any such infestation right away.

26. RAC also knew that used beds and mattresses removed from the homes of their customers could be infested with bed bugs and therefore could contaminate the next homes in which they are placed. Despite such knowledge, RAC fails to fumigate or heat treat such items to eliminate bed bug infestations prior to renting such items to its unsuspecting customers.

27. RAC is believed to have over 3,000 stores nationwide, and its business practices are contributing to the spread and resurgence of bed bugs throughout the nation.

28. RAC has long been aware that bed bugs present a significant public health hazard. RAC has known for years that medical conditions associated with bed bugs include multiple intensely itchy bites and inflammation, secondary skin infection, risk of anaphylaxis, stress, anxiety and sleeplessness. Furthermore, scientific literature has highlighted a viable mechanism by which bed bugs can transmit disease such as Chagas, hepatitis B, methicillin-resistant *staphylococcus aureus* (MRSA) and other blood borne pathogens.

## COUNT I – BREACH OF EXPRESS AND IMPLIED WARRANTIES
## UNDER THE MAGNUSON-MOSS WARRANTY ACT

29. Plaintiffs incorporate by reference all previous paragraphs as if fully set forth herein.

30. RAC is in the business of selling, leasing and delivering new and used home furnishings to the general public.

31. RAC expressly and impliedly warranted that the mattresses and bed leased and delivered by them to the Plaintiffs were of good quality, merchantable and fit for their ordinary and intended use.

32. RAC also warranted that it would be "responsible for maintaining the rental property in good working condition while it is being rented" and that it would "provide all necessary service, repair or replacement. . . ."

33. RAC breached these warranties by leasing Plaintiff mattresses and a bed that had an existing infestation of bed bugs, a defect not known to and not likely to be discovered by the Plaintiffs. A bed bug-infested mattress and bed is not fit for its ordinary purpose, as any person sleeping in such a bed will be bitten. RAC further breached these warranties by failing to properly maintain the rental property and failing to provide all necessary service, repair or replacement of the rental property after Plaintiffs' proper and timely notification.

34. Plaintiffs gave RAC notice of the breach of these warranties within a reasonable time after discovery of the infestation.

35. The property that Plaintiffs rented from RAC is a "consumer product" under the Magnuson-Moss Warranty-Trade Commission Act (hereinafter "MMWA").

36. Plaintiffs are "consumers" under the MMWA.

7

37. RAC is a "supplier" or "warrantor" under the MMWA.

38. RAC made and provided to Plaintiffs written and implied warranties in connection with RAC's rental of property to Plaintiffs, as set forth herein.

39. The MMWA, at 15 U.S.C. § 2310(d), provides for a private cause of action for consumers damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under the MMWA, or under a written warranty, implied warranty, or service contract.

40. By breaching express and implied warranties as set forth herein, RAC violated the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) and the MMWA by failing to comply with the requirements of the MMWA and regulations promulgated thereunder.

41. As a direct and proximate result of RAC's breaches of, and failure to comply with, its obligations under the MMWA and the written and implied warranties it provided, RAC violated the MMWA, thereby causing Plaintiffs to suffer damage to their property in the form of a bed bug infestation of their home and personal property, including but not limited to the bed, bedroom furniture, bedding, a couch and other property, as well as consequential damage to additional personal property as a result of the bed bug eradication process and the required preparations for carrying out that process.

42. As a further direct and proximate result of RAC's breaches of, and failure to comply with, its obligations under the MMWA and the written and implied warranties it provided, RAC violated the MMWA, thereby causing Plaintiffs Isaiah Seney, Nevaeh

Seney, and Christine Seney to suffer bodily injury, physical pain and suffering, and severe mental anguish, emotional distress, fear, anxiety, embarrassment and humiliation.

43. Finally, as an additional direct and proximate result of RAC's breaches of, and failure to comply with, its obligations under the MMWA and the written and implied warranties it provided, RAC violated the MMWA, thereby causing Plaintiffs to suffer economic loss, including but not limited to medical and pharmacy bills, extermination expenses, expenses associated with replacing personal property known or reasonably feared to be infested with bed bugs or bed bug eggs.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor in the amount of three hundred thousand dollars ($300,000) in compensatory damages, and, as applicable, interest, reasonably attorneys' fees, costs and expenses of suit, and such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

*/s/ Daniel W. Whitney*

Daniel W. Whitney
Jeffrey C. Shipley
WHITNEY & BOGRIS, LLP
Twelfth Floor
401 Washington Avenue
Towson, Maryland 21204
410-583-8000 (ph)
800-893-1239 (fax)

**Attorneys for Plaintiffs**

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

_____
Daniel W. Whitney
WHITNEY & BOGRIS, LLP
401 Washington Avenue
Twelfth Floor
Towson, Maryland 21204
(410) 583-8000 (ph)