IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **CHRISTINE SENEY** *et al.*, | * | |
| Plaintiffs | * | |
| v. | * | CIVIL NO. JKB-12-2347 |
| **RENT-A-CENTER, INC.,** *et al.* | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM

This suit was brought by Christine Seney, individually and as parent and next friend of I.S. and N.S., and by Antwan R. Seney against Rent-A-Center, Inc., and Rent-A-Center East, Inc. (collectively, "RAC"), in Maryland state court. (Compl., ECF No. 2.) Defendants removed to this Court (ECF No. 1) and filed a petition to enforce an arbitration agreement and to dismiss the case (ECF No. 7). The matter has been briefed (ECF Nos. 9, 10, 14, 16, 17), and no hearing is necessary, Local Rule 105.6 (D. Md. 2011). The petition will be granted.

### *I. Background*

The complaint included the following allegations: The Seneys entered into a contract with RAC, located in Kent County, Maryland, to rent a wooden trundle bed and two mattresses and to have these items delivered to their home in Camden, Delaware. (Compl. ¶ 5.) The items were duly delivered in April 2012 and set up in the bedroom used by I.S., the Seneys' five-year-old child. (*Id.* ¶ 6.) Within the first week of use, I.S. began to have itchy bites and a rash, and these symptoms continued to get worse. (*Id.* ¶ 8.) Ms. Seney called RAC to complain about the bed. (*Id.* ¶ 10.) RAC removed the mattresses, which were infested with bedbugs, from the house and burned them in a pit on the Seneys' property; they also delivered two new

mattresses, but did not replace the bed frame, which apparently also was infested with bedbugs. (*Id.* ¶ 11.) I.S. received medical treatment for his diagnosis of bedbug bites (*id.* ¶ 12), and Ms. Seney called RAC to remove the infested bed from the house (*id.* ¶ 12). RAC employees then dragged the bed out of the house and burned it on the Seneys' property. (*Id.* ¶ 13.) The Seneys paid a pest control company to treat the home for bedbugs, but the bedbugs were still present at the time of the filing of the complaint. (*Id.* ¶ 14.) RAC refused to pay for treatment of the entire house and for follow-up treatment. (*Id.*) The Seneys continue to have bedbug bites and have received additional medical treatment. (*Id.* ¶ 18.)

The Seneys' one-count complaint asserted breach of express and implied warranties under the Magnuson-Moss Warranty Act ("MMWA") and claimed damages of $300,000. In response, RAC filed its petition to enforce an arbitration agreement entered into by the Seneys at the same time they signed the rental agreement. Attached to the petition were various documents including the rental agreement and the arbitration agreement. (Defs.' Pet., Ex. A & B.) Also attached was an email from Mr. Seney to the "RAC Board" saying, "I am requesting arbitration and to speak with a representative in this matter." (*Id.* Ex. C.) The Seneys' opposition in response to the petition contains documentation that Ms. Seney mailed a letter to an arbitration service, but acknowledged that she did not retain a copy and did not know whether she had sent it to the American Arbitration Association ("AAA"), as required under the Arbitration Agreement. (Pls.' Opp., Ex. A.) Mr. Seney said in an affidavit that he "mailed a letter to RAC at its Texas address and mailed a copy of that letter to the [AAA] at its New York, New York address. . . [but] did not retain copies of the letters [he] sent." (*Id.* Ex. 2.) In any event, the AAA searched its files and found no request to arbitrate from the Seneys. (*Id.* Ex. B.)

*II. Standards for Decision*

Because the Court must refer to the documents attached to the petition, it will apply the standard for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The Court is satisfied that no factual dispute exists and that the only questions to be decided are questions of law.

A district court must grant a petition to compel arbitration where a valid arbitration agreement exists and the issues presented in the case fall within the scope of that agreement. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). The elements involved in the decision whether to compel arbitration are the following:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [other party] to arbitrate the dispute.

*Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991), *cited in Adkins*, 303 F.3d at 500-01.

Only the second element is in disagreement between the parties. Specifically, although the Seneys do not dispute that they signed an arbitration agreement and that it was incorporated into their rental agreement, they argue the arbitration agreement does not require them to arbitrate their MMWA claim.

*III. Analysis*

At the outset of the Court's analysis, it is noted that courts have disagreed whether an MMWA claim must be subjected to binding arbitration based on an arbitration agreement, and it

is further noted that the Fourth Circuit has not yet addressed this issue. Thus, a question of first impression is presented to this Court.

   A. *The Statutes, Regulations, and Agency Comments*

The MMWA was enacted in 1975 and is now codified in Title 15, United States Code, Sections 2301 through 2312. Its stated purposes are set forth in § 2302(a):

> In order to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products, any warrantor warranting a consumer product to a consumer by means of a written warranty shall, to the extent required by rules of the Commission, fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty.

The statute encourages warrantors to establish informal dispute settlement mechanisms and allows warrantors to require consumers to resort first to such mechanisms before pursuing any legal remedy granted by the MMWA. Section 2310(a). Warrantors are not required to establish an informal dispute settlement mechanism, however; but if they do, and if they incorporate the mechanism into the warranty, then it must meet certain requirements of the Federal Trade Commission ("FTC"). 40 Fed. Reg. 60168, 60190-91 (1975).

The MMWA also grants a right to bring a suit for damages and other legal and equitable relief in any court of competent jurisdiction of a State or the District of Columbia or in an appropriate federal district court. Section 2310(d)(1). The right to sue embraces not only written warranties but also implied warranties. An award of damages under this section may include costs and attorney's fees. Section 2310(d)(2).

Elsewhere in the MMWA, the FTC is charged with prescribing rules for the manner and form of written warranties, § 2302(b)(1); for defining the duties of a warrantor to provide remedies, § 2304(a), (b); for the manner and form of disclosure of the terms and conditions of service contracts, § 2306(a); and for the minimum requirements of any informal dispute

settlement mechanism that is incorporated into the terms of a written warranty, § 2310(a). Further, the FTC, "to the extent necessary to supplement the protections offered the consumer by this chapter, shall prescribe rules dealing with such warranties and practices." Section 2309(b).

The FTC has issued a regulation stating that a decision of any informal dispute settlement mechanism "shall not be legally binding on any person." 16 C.F.R. § 703.5(j). The FTC has interpreted its rule, § 703.5(j), and the MMWA as prohibiting reference *within the written warranty* to a binding, nonjudicial remedy. 40 Fed. Reg. at 60210. Nonetheless, the FTC clarified,

> [T]here is nothing in the Rule which precludes the use of any other remedies by the parties following a Mechanism decision. The warrantor, the Mechanism, or any other group can offer a binding arbitration option to consumers who are dissatisfied with Mechanism decisions or warrantor intentions.

*Id.* at 60211.

In addition, the FTC noted during its rulemaking proceeding that some commenters on their proposed rule had suggested that, in some cases, the warrantor and the consumer might want to agree to use a remedy such as binding arbitration instead of utilizing the mechanism. In response, the FTC stated, "Again, nothing in the Rule precludes the parties from agreeing to use some avenue of redress other than the Mechanism if they feel it is more appropriate." *Id.* The FTC revisited § 703.5(j) in 1999, but left both it and the FTC's interpretations of it unchanged. 64 Fed. Reg. 19700, 19707-09 (1999).

The other statute involved in this case is the Federal Arbitration Act ("FAA"), which was enacted in 1925 and is codified in Sections 1 through 16, Title 9, United States Code. In § 2, Congress provided,

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or

any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

B. *Agreements between the Parties*

The Seneys and RAC executed two agreements. The first, the "Rental-Purchase Agreement," contained two provisions relevant to this case. Paragraph 10 stated,

> **WARRANTY:** If allowed by the manufacturer, the manufacturer's express warranty covering the rental property rented under this agreement will be transferred to you if, and at the time, you acquire ownership of the rental property.

Paragraph 14 provided,

> **ARBITRATION: An Arbitration Agreement comes with and is incorporated into this rental purchase agreement. You should read the Arbitration Agreement before signing this agreement.**

Immediately after Paragraph 14, and immediately above the signature line, the following statement appeared:

> **I have read the above disclosures before signing this rental-purchase agreement.**

The other agreement was entitled, "Rent-A-Center/RAC Acceptance Consumer Arbitration Agreement." It provided in pertinent part,

> **PLEASE READ THIS ARBITRATION AGREEMENT. IF YOU DO NOT SEND IN A REJECTION NOTICE, AS SET OUT IN PARAGRAPH (A) BELOW, THIS ARBITRATION AGREEMENT SHALL BECOME BINDING AND ENFORCEABLE.**
>
> . . .
>
> You and RAC hereby agree that any and all "Claims," as defined below (unless specifically excluded below in Paragraph (D) Class Action Waiver and Paragraph (C) What Claims Are Not Covered) that arise under, arise out of, or relate in any way to any Consumer Lease or Rental-Purchase Agreement and/or any and all services rendered under any Consumer Lease or Rental-Purchase Agreement, entered into between you and RAC, at any time, shall only be resolved by binding arbitration in accordance with the terms and procedures set forth in this Arbitration Agreement.
>
> . . .

**(B)  What Claims Are Covered:**  "Claim" shall be interpreted as broadly as the law allows and means any dispute or controversy between you and RAC, its officers, directors, employees, or agents, its parent company, subsidiary, affiliate entities, and assigns of any of them, based on any legal theory, including but not limited to allegations based on negligence, breach of contract, tort, fraud, misrepresentation, trespass, the common law, or any statute, regulation or ordinance.

**(C)  What Claims Are Not Covered:**  Either Party shall have the right to file a lawsuit in a court of competent jurisdiction only if the lawsuit or Claim is strictly limited to requests for individual non-class injunctive relief and/or individual non-class declaratory relief to determine the right of possession of any property, and/or a Claim that requests/seeks monetary relief/damages not to exceed $5,000.00 including attorneys' fees.  Any Claim or request seeking monetary relief/damages, including any counterclaims, greater than $5,000.00 including attorneys' fees shall only be resolved by arbitration pursuant to this Agreement.

. . .

**(E)  Starting or Initiating Arbitration:**  Either you or RAC may start or initiate Arbitration by sending written notice to the other **and** to the American Arbitration Association/AAA, by certified mail, return receipt requested, no later than the expiration of the statute of limitations (deadline for filing) that applicable state or federal law prescribes for the Claim.  A written request for arbitration of any Claim should be made as soon as possible after the event or events in dispute so that the arbitration of any differences may take place promptly.  Written requests for arbitration by you should be sent to:  Rent-A-Center's Legal Department, 5501 Headquarters Drive, Plano, Texas 75024-5837.  Written requests for arbitration by RAC will be sent to you at the last known address you provided to RAC.  The request must state "Request for Arbitration" and should give a short statement of the Claim.  A copy of the notice must also be sent to:  The American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019.

. . .

**(J)  Sole and Entire Agreement:**  This is the complete Agreement of the parties on the subject of arbitration of Claims/disputes.  This Agreement to arbitrate shall survive the termination of any Consumer Lease or Rental-Purchase Agreement you entered into with RAC.  Unless this Agreement in its entirety is deemed void, unenforceable or invalid, this Agreement supersedes any prior or contemporaneous oral or written understandings on the subject.  No party is relying on any representations, oral or written, on the subject of the effect, enforceability, or meaning of this Agreement, except as specifically set forth in this Agreement.

. . .

**ACKNOWLEDGEMENT**

BY SIGNING BELOW, YOU ACKNOWLEGE THAT:  (1) YOU HAVE READ THIS ENTIRE ARBITRATION AGREEMENT CAREFULLY; (2) YOU ARE ENTERING INTO THIS ARBITRATION AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS OTHER THAN THOSE CONTAINED IN THIS ARBITRATION AGREEMENT; (3) YOU HAVE THE RIGHT TO REJECT THIS ARBITRATION AGREEMENT IN ACCORDANCE WITH PARAGRAPH (A) ABOVE; AND (4) YOU HAVE BEEN PROVIDED WITH A DUPLICATE COPY OF THIS ARBITRATION AGREEMENT.

C.  *Construction of the Agreements*

The Arbitration Agreement signed by the Seneys unmistakably covers a statutory claim arising out of the Rental-Purchase Agreement.  The Seneys have provided no evidence that they rejected the Arbitration Agreement.  They are, accordingly, bound by it.  Their only argument relating to the validity of the Arbitration Agreement seems to be that it is invalid because it purports to cover a claim made under the MMWA.  The Court concludes, however, that the Seneys' argument has no merit.

D.  *FAA Scope*

It is well recognized in the caselaw that the FAA was intended to "revers[e] centuries of judicial hostility to arbitration agreements," to permit parties to avoid "'the costliness and delays of litigation,' and to place arbitration agreements 'upon the same footing as other contracts.'" *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510-11 (1974) (citing H.R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924); S. Rep. No. 536, 68th Cong., 1st Sess. (1924)).  Thus, the FAA is "a clear federal command that courts cannot treat arbitration in general as an inferior or less reliable means of vindicating important substantive rights," including statutory rights.  *Adkins*, 303 F.3d at 502.

In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), the Supreme Court readily disposed of the argument that, as a matter of law, a court may not construe an arbitration agreement to include claims arising from statutes "designed to protect a class to which the party resisting arbitration belongs 'unless [that party] has expressly agreed' to arbitrate those claims." *Id.* at 624.  In the absence of well-supported claims that the arbitration agreement was a product of fraud or overwhelming economic power, which would provide a basis for revocation of any contract, the FAA "itself provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability." *Id.* at 627.  Consequently, it is only when Congress has expressed in another statute an intent to exclude particular statutory claims from the arbitral forum that a court may find an agreement to arbitrate unenforceable as to them. *Id.*

> [I]f Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history.  Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.

*Id.* at 628 (citation omitted).  The Court, thus, reaffirmed an earlier conclusion that an agreement to arbitrate is a specialized kind of forum-selection clause. *Id.* at 629-31.  In a later case, the Court also indicated that a congressional intention could be ascertained from the statute's underlying purposes if they were in inherent conflict with a waiver of judicial remedies. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987).

Accordingly, it must be ascertained whether either the text or the legislative history or the MMWA's purposes "evince[] an intention to preclude a waiver of judicial remedies for the statutory rights" provided by the MMWA.

### E.  Text, Legislative History, and Purposes of the MMWA

The Seneys argue that the MMWA superseded the FAA. Their assertion that the MMWA's later enactment trumped the FAA is unsupported by either the text or the legislative history. Nothing in the MMWA's text expresses an intent by Congress to preclude binding arbitration as a means of resolving disputes under the statute.

The Seneys point to § 2310(d)(1), which grants a right to sue in either state or federal court for damages or other relief, as "plain language" that indicates an intent to preserve a consumer's right to bring a lawsuit for breach of written or implied warranties. This rationale has been refuted by the Supreme Court. When faced with a similar argument pertaining to the Securities Act of 1933 in *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989), the Court responded, "Once the outmoded presumption of disfavoring arbitration proceedings is set to one side, it becomes clear that the right to select the judicial forum and the wider choice of courts are not such essential features of the Securities Act that § 14 [which prohibits waiver of compliance with any provision of the Act] is properly construed to bar any waiver of these provisions." *Id.* at 481. The Court further noted the presence of similar provisions in other statutes that had not been interpreted to prohibit enforcement of predispute arbitration agreements. *Id.* at 482 (citing *McMahon* (construing Securities Exchange Act of 1934 and RICO) and *Mitsubishi* (construing antitrust laws)). Therefore, the mere statutory specification that a consumer may pursue a right of action in a judicial forum does not *per se* preclude a waiver of judicial avenues in favor of resolution of a claim through arbitration.

Next, the Seneys point to language in the MMWA encouraging warrantors to establish informal dispute settlement mechanisms. If warrantors do establish such mechanisms and if they are incorporated into the terms of a written warranty, then, according to the FTC, the mechanisms cannot be legally binding. Consequently, the Seneys argue, "the MMWA does not

allow for the resolution of claims through forced or binding arbitration." This is an unwarranted leap in logic. It also ignores the FTC's clear statements drawing a distinction between "mechanisms" for informal dispute settlement on the one hand and binding arbitration on the other hand, and finding room for both in the resolution of disputes under the MMWA.

The Seneys further interpret snippets of legislative history to support their argument, but these excerpts have no traction in light of the Supreme Court's analysis of a statutory right to sue in a judicial forum as being, without more, a nonexclusive expression of the manner in which a party may resolve a dispute. *See, e.g.*, Pls.' Opp. 10-11 (citing *Parkerson v. Smith*, 817 So. 2d 529 (Miss. 2002), citing in turn, 119 Cong. Rec. 972 (Jan. 12, 1973), and H.R. Rep. 93-1107, 93d Cong., 2d Sess. 41)). Plaintiffs do not argue that the MMWA's purposes are in inherent conflict with the FAA, and the Court concludes they are not. The laudable purposes of the MMWA may be fully vindicated in an arbitral forum.

With no further textual or historical support for their argument, the Seneys rely upon decisions from various courts holding the MMWA precludes predispute agreements to engage in binding arbitration. These other decisions are unpersuasive and rely upon the same incomplete analysis of FTC statements, underlying judicial hostility to arbitration in the field of consumer protection, or a seeming disregard of Supreme Court opinions that address the interplay between the FAA and other statutes. *See, e.g.*, *Koons Ford of Baltimore, Inc. v. Lobach*, 919 A.2d 722 (Md. 2007); *Parkerson v. Smith*, 817 So. 2d 529 (Miss. 2002); *Rickard v. Teynor's Homes, Inc.*, 279 F. Supp. 2d 910 (N.D. Ohio 2003); *Browne v. Kline Tysons Imports, Inc.*, 190 F. Supp. 2d 827 (E.D. Va. 2002); *Pitchford v. Oakwood Mobile Homes, Inc.*, 124 F. Supp. 2d 958 (W.D. Va. 2000).[1] More persuasive are decisions of the Fifth and Eleventh Circuits that have analyzed the

---

[1] Plaintiffs also cite a decision of an intermediate appellate court in Texas to support their argument. The case they cite, *In re Van Blarcum*, 19 S.W.3d 484 (Tex. App. 2000), is no longer good law. The Texas Supreme Court reversed the intermediate court's decision in *In re American Homestar of Lancaster, Inc.*, 50 S.W.3d 480

MMWA and have concluded that predispute agreements to arbitrate claims arising under the statute are valid and enforceable. *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268 (11th Cir. 2002); *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470 (5th Cir. 2002). This Court has found no case contrary to the *Davis* and the *Walton* decisions with which it can fully agree.

Accordingly, the Court holds that a predispute agreement to arbitrate a breadth of claims including statutory claims is valid and enforceable, pursuant to the FAA, without exception for claims brought under the MMWA. The Court further holds that the agreement to arbitrate in this case validly encompassed the Seneys' claim under the MMWA.

### F. Nonsignatories

The Seneys argue that their two minor children were not signatories to either the Rental-Purchase Agreement or the Arbitration Agreement and, therefore, cannot be governed by either agreement. This argument is also unmeritorious. The sole basis for this suit is to claim warranty protection under the Rental-Purchase Agreement. Anyone claiming the benefit of an agreement—including implied warranties—is also subject to the burdens of the agreement. In this case, the parents voluntarily agreed to arbitrate all claims arising under the Rental-Purchase Agreement, with only minor exceptions that do not apply to these circumstances. To grant the minor children a right to pursue a breach-of-warranty claim independent of the agreement from which the warranty originated is nonsensical.

Plaintiffs rely upon a Fifth Circuit case, but it is inapposite. In *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069 (5th Cir. 2002), the court concluded that, under Texas law, nonsignatory, minor children could not be compelled to arbitrate their personal injury tort claims that were based on alleged exposure to formaldehyde in a mobile home purchased by their

---

(Tex. 2001). In addition, the Seneys cite a district court decision from the Middle District of Alabama, *Yeomans v. Homes of Legend, Inc.*, No. 00-D-824-N, 2001 WL 237313 (M.D. Ala. Mar. 5, 2001), but that decision has also been overruled. *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268 (11th Cir. 2002).

parents. *Id.* at 1075. Texas law allowed nonsignatories to be bound by arbitration agreements in only two situations: one, where the nonsignatory sued on the contract, and two, where the nonsignatory was a third-party beneficiary of the contract. The *Gaskamp* case fit neither situation, according to the Fifth Circuit. *Id.* at 1074. Of note, the court observed that the minor children's claims were not contractual claims; they were not attempting to enforce the contract or sue on the basis of warranties contained in the contract. *Id.* at 1075.

Similar principles exist in Maryland law, which Plaintiffs assert applies to this issue. *See Thompson v. Witherspoon*, 12 A.3d 685, 695-97 (Md. Ct. Spec. App. 2011) (nonsignatory is estopped from refusing to comply with arbitration clause when such individual receives direct benefit from contract or seeks to enforce it). However, the Fourth Circuit has stated that whether a nonsignatory is bound by an arbitration agreement "presents no state law question of contract formation or validity"; consequently, the Court must "look to the 'federal substantive law of arbitrability' to resolve this question." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000). Nevertheless, under the *Int'l Paper* opinion, the result is the same. That is, one cannot claim a benefit of a contract and simultaneously avoid its burdens; to do so would be inequitable and would contravene the FAA's underlying purposes. *Id.* at 418.

Applying those principles to this case, the nonsignatory minor children cannot claim the benefit of the warranties governing their parents' agreement with RAC without also being subject to its burden, *i.e.*, the agreement to arbitrate. Consequently, the Court holds I.S. and N.S. are subject to the requirement to arbitrate their MMWA claim against RAC.

### G. *Discharge of Obligation to Arbitrate*

The Seneys' last argument is that they made a request to arbitrate and, consequently, "fulfilled any obligation they may have had to first seek alternative dispute resolution and RAC,

by its inaction, waived any argument that Plaintiffs must first resort to such procedure." (Pls.' Opp. 20.) This contention is premised upon the mistaken notion that the Arbitration Agreement established an informal dispute settlement mechanism within the meaning of the MMWA and that RAC's failure to respond within the time limits established by the FTC for response by such mechanisms somehow works a forfeiture of RAC's right to insist upon binding arbitration.

As has been earlier noted, a difference exists between informal dispute settlement mechanisms and binding arbitration, and either or both can be utilized in resolving disputes under the MMWA. Beyond that, the Rental-Purchase Agreement did not include an express warranty. It only contained an intent to transfer any express manufacturer's warranty upon the occurrence of two conditions: one, approval by the manufacturer and, two, achievement of ownership by the Seneys of the property subject to the Rental-Purchase Agreement. Neither condition came to fruition. Even if those conditions had occurred, the warranty provision, such as it was, had no informal dispute settlement mechanism included *within the terms of the written warranty*. The Arbitration Agreement was not a term of the warranty provision. It was incorporated into the overall Rental-Purchase Agreement by a separate provision. The structure of the agreements governing the transaction between the Seneys and RAC is in full accord with the MMWA, as interpreted by the FTC.

Since no informal dispute settlement mechanism was evident in the written warranty provision of the Rental-Purchase Agreement, the Seneys cannot rely upon the MMWA's restrictions upon such mechanisms to bar arbitration even if the MMWA included a forfeiture provision, which it does not. RAC is fully within its rights to insist upon binding arbitration. Although the Seneys say they made a request to arbitrate, the evidence shows that the Seneys made an informal contact with RAC about arbitration, but no evidence shows that the Seneys

followed the procedures established in the Arbitration Agreement in order to trigger RAC's duty to arbitrate.

RAC has requested the Court dismiss this case rather than stay it.  Under the FAA, a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."  9 U.S.C. § 3.  The Fourth Circuit has concluded that, "[n]otwithstanding the terms of § 3, . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."  *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001).  In this case, all of the issues presented in the Seneys' case are arbitrable, and dismissal, therefore, is proper.

## *IV. Conclusion*

The Court concludes that a claim under the Magnuson-Moss Warranty Act is properly encompassed within an agreement to arbitrate that includes within its scope statutory claims.  Further, the Court determines that the Seneys' agreement with RAC to arbitrate disputes arising from their transaction included their claims under the MMWA.  In addition, the Court concludes I.S. and N.S., minor children of the Seneys, are bound by the agreement to arbitrate claims pertaining to warranties, including claims under the MMWA.  Finally, the Court determines the Seneys did not discharge their obligations to initiate arbitration under the Arbitration Agreement and that RAC is entitled to have the Seneys' claims submitted to binding arbitration.  A separate order will issue.

DATED this <u>18th</u> day of December, 2012.

                                                BY THE COURT:

                                                _____/s/_____
                                                James K. Bredar
                                                United States District Judge